UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SAMANTHA DRISCOLL, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>XO GROUP INC., MICHAEL ZEISSER, MICHAEL STEIB, CHARLES BAKER, JAN HIER-KING, DIANE IRVINE, BARBARA MESSING, and PETER SACHSE,<br><br>Defendants. | Civil Action No. 1:18-cv-10909<br><br>CLASS ACTION COMPLAINT<br><br>DEMAND FOR JURY TRIAL<br><br>1. VIOLATIONS OF SECTION 14(a) OF THE SECURITIES EXCHANGE ACT OF 1934 AND RULE 14a-9<br><br>2. VIOLATIONS OF SECTION 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934 |

Samantha Driscoll ("Plaintiff"), on behalf of herself and all others similarly situated, by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

**NATURE OF THE ACTION**

1. This is a class action brought by Plaintiff on behalf of herself and the other shareholders of XO Group, Inc. ("XO Group" or the "Company"), except Defendants (defined below) and their affiliates, against XO Group and the members of XO Group's board of directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed merger (the "Proposed Merger") between XO Group and WeddingWire, Inc. ("WeddingWire").

1

2. On September 24, 2018, the Board caused the Company to enter into an agreement of plan of merger (the "Merger Agreement") with the WeddingWire, pursuant to which, XO Group shareholders will receive $35.00 in cash for each share of XO Group stock they own (the "Merger Consideration").

3. On, November 13, 2018, the Board authorized the filing of a materially incomplete and misleading preliminary proxy statement (the "Proxy") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act that recommends shareholders vote in favor of the Proposed Merger.

4. While Defendants are touting the fairness of the Merger Consideration to the Company's shareholders in the Proxy, they have failed to disclose material information that is necessary for shareholders to properly assess the fairness of the Proposed Merger, thereby rendering certain statements in the Proxy incomplete and misleading. Specifically, the Proxy contains materially incomplete and misleading information concerning the valuation analyses performed by the Company's financial advisor, Allen & Company LLC ("Allen & Company"), in support of their fairness opinion.

5. It is imperative that the material information omitted from the Proxy is disclosed to the Company's shareholders prior to the forthcoming shareholder vote, so that they can properly exercise their corporate suffrage rights.

6. For these reasons as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from holding the shareholder vote on the Proposed Merger and taking any steps to consummate the Proposed Merger unless and until the material information discussed

below is disclosed to XO Group shareholders, or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331, federal question jurisdiction, as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

8. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

9. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) XO Group maintains its primary place of business in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including Defendants' primary participation in the wrongful acts detailed herein, occurred in this District; and (iv) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## PARTIES

10. Plaintiff is, and has been at all relevant times, the owner of XO Group common stock and held such stock since prior to the wrongs complained of herein.

11. Defendant XO Group is a Delaware corporation with its principal executive offices located at 195 Broadway, 25th Floor, New York, NY 10007. The Company operates internet

websites, publishes magazines and books, and produces television and video contents offering information, products, and advice concerning weddings and pregnancy. XO Group's common stock trades on the NYSE under the symbol "XOXO."

12. Individual Defendant Michael Zeisser is director of XO Group and Chairman of the Board.

13. Individual Defendant Michael Steib is a director of XO Group and the Chief Executive Officer of the Company.

14. Individual Defendant Charles Baker is, and has been at all relevant times, Lead Director of XO Group.

15. Individual Defendant Marc Kozin is, and has been at all relevant times, a director of XO Group.

16. Individual Defendant Jan Hier-King is, and has been at all relevant times, a director of XO Group.

17. Individual Defendant Diane Irvine is, and has been at all relevant times, a director of XO Group.

18. Individual Defendant Barbara Messing is, and has been at all relevant times, a director of XO Group.

19. Individual Defendant Peter Sachse is, and has been at all relevant times, a director of XO Group.

20. The parties identified in ¶¶ 11-19 are collectively referred to as the "Defendants".

## CLASS ACTION ALLEGATIONS

21. Plaintiff brings this action on her own behalf and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all holders of XO Group common stock

who are being and will be harmed by Defendants' actions described below (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants.

22. This action is properly maintainable as a class action for the following reasons:

(a) The Class is so numerous that joinder of all members is impracticable. As of the close of business on November 12, 2018, XO Group had 25,923,056 shares of common stock outstanding held by hundreds to thousands of individuals and entities—the actual number of public shareholders will be ascertained through discovery;

(b) The holders of these shares are believed to be geographically dispersed through the United States;

(c) There are questions of law and fact which are common to the Class and which predominate over questions affecting individual Class members. The common questions include, *inter alia*, the following:

   i. Whether Defendants have violated Section 14(a) of the Exchange act and Rule 14a-9 promulgated thereunder;

   ii. Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

   iii. Whether Plaintiff and the other members of the Class would suffer irreparable injury were they required to vote on the Proposed Merger as presently anticipated;

(d) Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

5

(e) The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class; and

(f) Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## **SUBSTANTIVE ALLEGATIONS**

### I. Background and the Proposed Merger

23. XO Group, incorporated on May 2, 1996, is engaged in providing content and marketing solutions, targeted advertising programs, transactions and merchandise. The Company's multi-platform brands guide couples through transformative life stages from getting married with The Knot, to moving in together with The Nest, to having a baby with The Bump, and helping bring important celebrations to life with entertainment vendors from GigMasters.com Incorporated (GigMasters). The Company offers multiplatform media and marketplace services that enable its advertising and transaction partners to connect with its audience in the wedding, pregnancy and parenting, nesting and local entertainment markets. The Company reaches its audience through various platforms, including Websites, mobile applications, magazines and books, television and video. The Company's product offerings include Online Media Advertising, Transactions, and Publishing and Other.

24. WeddingWire operates an online marketplace that connects couples and businesses with event and creative professionals. The company offers WeddingWire, a SaaS business platform that provides front and back-office solutions for event merchants, from venues and

photographers to caterers and entertainers. Its platform helps event merchants generate leads by providing online exposure in the vertical network in the industry; and enables users to search, compare, and book event merchants from venues to photographers, as well as to find and read local vendor reviews. The company also offers a suite of online planning, advertising, marketing, and management tools for businesses which includes wedding websites, wedding checklists, payment processing and invoicing tools, and contracts. In addition, it operates WeddingWire Snapchat Geofilters, a custom wedding resource for social media; and EventWire, an online marketplace that serves corporate events, bar/bat mitzvahs, proms, reunions, and more. The company serves wedding, corporate, and social events industry in North America, Latin America, Europe, and internationally. WeddingWire, Inc. was incorporated in 2006 and is based in Chevy Chase, Maryland with regional offices in Barcelona, Spain and Brasov, Romania.

25.     On September 25, 2018, XO Group issued a press release to announce the Proposed Merger stating, in relevant part, as follows:

### XO Group Inc. to Become Privately Held Company and Merge With WeddingWire, Accelerating Growth Within Global Wedding Industry

### XO Group Shareholders to Receive $35 Per Share in Cash

New York, NY - September 25, 2018 – XO Group Inc. (NYSE:XOXO), the operator of The Knot, a leading digital marketplace connecting engaged couples with wedding professionals, today announced that it has signed a definitive agreement whereby XO Group will become a privately held company and merge with WeddingWire, Inc. in a transaction valued at $933 million. Under the terms of the agreement, XO Group shareholders will receive $35.00 per share in cash, representing a 44% premium to XO Group's 12-month average closing price and a 27% premium to XO Group's closing price as of Monday, September 24, 2018. XO Group's Board of Directors has unanimously approved the transaction, which is expected to close in the first half of 2019. Upon closing, the combined company will be owned by the Permira Funds and Spectrum Equity, who are current investors in WeddingWire.

The combined company will maintain both brands, The Knot and WeddingWire, as separate consumer products so that couples can continue to enjoy both offerings,

while delivering enhanced value to wedding professionals and partners across the globe. Following closing, XO Group CEO Mike Steib and WeddingWire CEO Tim Chi will serve as co-CEOs of the combined company.

"This is a proud day for XO, a tribute to the dedication of the amazing people at this company, a terrific outcome for our stockholders, and another positive step towards our mission of serving the couples and wedding pros we love," said Mike Steib, XO Group CEO.

"Eleven years ago, we started WeddingWire with a deep commitment to help engaged couples plan the most important day of their lives," said Tim Chi, co-founder and CEO, WeddingWire. "This is a tremendous opportunity to further our commitment by accelerating innovation and creating the best wedding planning experience - benefitting engaged couples, wedding professionals, our employees and the global wedding industry."

Michael Zeisser, XO Group's Chairman, commented, "After a thorough assessment, the XO Board has unanimously determined that this transaction is a compelling outcome for our employees, customers, and stockholders. For our stockholders, and in accordance with the board's stated commitment to delivering shareholder value, it recognizes the worth of XO Group's strong franchise and delivers compelling, all-cash consideration."

The two companies have over 1,700 employees and serve engaged couples and wedding professionals in 15 countries across North America, Europe, Latin America, and Asia through global wedding brands The Knot, WeddingWire, Bodas.net, Matrimonio.com, WeddingWire.in and more. As a unified company, it will be better positioned to provide consumer offerings focused on the highly competitive $250 billion global wedding industry across both of its primary brands, WeddingWire and The Knot. The companies will build upon their more than four decades of combined expertise to redefine the category and continue to transform both the consumer and vendor experiences for the better. Together, engaged couples around the world will gain access to richer content, inspiration, registry services, and planning tools. Vendors, retailers, and national brands will benefit from enhanced advertising and marketing reach to the expansive global wedding audience, as well as industry-leading tools and analytics to help grow their businesses.

Key strategic benefits of the merger include:

● Broader offerings. The expansive complementary networks and diversified features of the combined organization will strengthen the company's ability to serve engaged couples, wedding vendors, and retailers across 15 countries.
● Accelerated innovation. The collaboration in research and technology will help to streamline development and better address the evolving needs of engaged couples and wedding vendors in the wedding industry.

8

- Enhanced financial flexibility and strength. The merger will allow the combined company to pursue growth opportunities while continuing to invest in its current business.
- Talent opportunities. The companies employ some of the industry's most talented teams and the global scale of the future combined company will represent worldwide opportunities for career development and growth.

The combined company will also include XO Group's leading life stage websites The Nest, The Bump, Gigmasters, How He Asked, and Lasting.

**Transaction Details**

Under the agreement, XO Group shareholders will receive $35 in cash for each share of XO Group upon consummation of the transaction. The transaction price represents a premium of 27% to XO Group's closing price on September 24, 2018 and a premium of 44% to the 12 month average closing price, and exceeds the highest closing price in XO Group's 19-year history as a public company. The Permira Funds and Spectrum Equity – current lead investors in WeddingWire – will finance the transaction.

The transaction is expected to close in the first half of 2019 and is subject to the satisfaction of customary closing conditions, including the expiration of the required regulatory waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976 and the approval of XO Group's shareholders.

**Advisors**

Allen & Company LLC is serving as financial advisor to XO Group. Wachtell, Lipton, Rosen & Katz is serving as legal advisor to XO Group. J.P. Morgan Securities LLC, is serving as financial advisor to WeddingWire and Jefferies LLC and RBC Capital Markets are serving as financial advisors to the Permira Funds. Fried, Frank, Harris, Shriver & Jacobsen LLP and Wilson Sonsini Goodrich & Rosati are serving as legal advisors to the Permira Funds and WeddingWire. Additionally, JPMorgan Chase Bank, N.A., UBS AG, Stamford Branch, Jefferies Finance LLC and RBC Capital Markets have provided debt financing commitments as part of the transaction.

26.     It is imperative that shareholders receive the material information (discussed in detail below) that Defendants have omitted from the Proxy, which is necessary for shareholders to properly exercise their corporate suffrage rights and cast an informed vote on the Proposed Merger.

**II.     The Proxy Is Materially Incomplete and Misleading**

27.     On November 13, 2018, XO Group filed the Proxy with the SEC in connection with the Proposed Merger. The Proxy solicits the Company's shareholders to vote in favor of the Proposed Merger. Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy misrepresents and/or omits material information that is necessary for the Company's shareholders to cast an informed vote regarding Proposed Merger, in violation of Sections 14(a) and 20(a) of the Exchange Act.

28.     First, with respect to the *Discounted Cash Flow Analysis* ("DCF") prepared by Allen & Company, the Proxy fails to disclose the following key components used in their analyses: (i) the inputs and assumptions underlying the calculation of the discount rate range of 11% to 13%, including the WACC components and company-specific CAPM inputs; (ii) the inputs and assumptions underlying the selected range of terminal value adjusted EBITDA multiples of 11.0x to 13.0x; (iii) the actual terminal values calculated; and (iv) the value of stock-based compensation that was treated as a cash expense.

29.     These key inputs are material to XO Group shareholders, and their omission renders the summary of the *Discounted Cash Flow* Analyses incomplete and misleading. As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, *Fairness Opinions*, 55 AM. U.L. REV. 1557, 1576 (2006). Such choices include "the appropriate discount rate, and the terminal value…" *Id*. As Professor Davidoff explains:

10

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques. This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id*. at 1577-78.

30. Without the above-omitted information XO Group shareholders are unable to assess the reasonableness or reliability of Allen & Company's analyses, and unable to properly assess the fairness of the Proposed Merger. Accordingly, these material omissions render the summaries of the *Discounted Cash Flow* Analyses included in the Proxy incomplete and misleading.

31. Second, with respect to Allen & Company's *Selected Public Companies Analysis* and *Selected Precedent Transactions Analysis* the Proxy fails to disclose the individual multiples for each company and transaction utilized in the analyses. A fair summary of companies and transactions analyses requires the disclosure of the individual multiples for each company and transaction a financial advisor selects. Merely providing the range of values that a banker applied is insufficient, as shareholders are unable to assess whether the banker applied appropriate multiples, or, instead, applied unreasonably low multiples in order to drive down XO Group's implied value. Accordingly, the omission of this material information renders the summary of Allen & Company's Companies Analysis provided in the Proxy misleading.

32.     Lastly, with respect to the XO Group Forecasts, the Proxy fails to disclose the individual line item projections for the metrics that were used to calculate Adjusted EBITDA (*i.e.* GAAP income from operations adjusted to exclude, if applicable: (i) interest, (ii) tax, (iii) depreciation and amortization, (iv) gains or losses from equity method investments, (v) stock-based compensation expense, (vi) asset impairment charges, and (vii) other items affecting comparability during the period) and Unlevered Freeh Cash Flow (*i.e.*, net operating profit after taxes, plus depreciation and amortization, minus (i) change in net working capital and (ii) capital expenditures.).  Given that both Adjusted EBITDA and Unlevered Free Cash Flow are non-GAAP metrics subject to various non-standardized adjustments, the individual line item projections for the metrics used to calculate Adjusted EBITDA and Unlevered Free Cash Flow are material to shareholders and necessary for them to fully and properly assess the Company's financial projections and value.  Such information is of the utmost importance to shareholders faced with a cash-out merger, and the omission of such projections renders the summary of the XO Group Forecasts on page 43-44 of the Proxy incomplete and misleading.

33.     In sum, the omission the of the above-referenced information renders statements in the Proxy materially incomplete and misleading in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Merger, Plaintiff and the other members of the Class will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Merger, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

**On Behalf of Plaintiff and the Class Against All Defendants for Violations of Section 14(a) of the Exchange Act**

34. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

35. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

36. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that Proxy communications with shareholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

37. The omission of information from a proxy statement will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

38. Defendants have issued the Proxy with the intention of soliciting shareholder support for the Proposed Merger.  Each of the Defendants reviewed and authorized the dissemination of the Proxy and the use of their name in the Proxy, which fails to provide critical information regarding the valuation analyses performed by Allen & Company and the Company's projections.

39. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

40. Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most, if not all, of the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger. Indeed, the Proxy states that Defendants were privy to and had knowledge of the financial projections for XO Group and the details surrounding discussions with other interested parties and Allen & Company. Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to review Allen & Company's analyses in connection with their receipt of the fairness opinions, question the bankers as to their derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

41. Each of the Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The

Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement, the preparation and review of strategic alternatives, and the review of XO Group's financial projections.

42. XO Group is also deemed negligent as a result of the Individual Defendants negligence in preparing and reviewing the Proxy.

43. The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, and will deprive them of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the shareholder vote on the Proposed Merger.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff and the Class Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

44. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45. The Individual Defendants acted as controlling persons of XO Group within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of XO Group, and participation in and/or awareness of the XO Group's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or

indirectly, the decision making of XO Group, including the content and dissemination of the statements that Plaintiff contends are materially incomplete and misleading.

46.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

47.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of XO Group, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Merger. The Proxy at issue contains the unanimous recommendation of the Board to approve the Proposed Merger. The Individual Defendants were thus directly involved in the making of the Proxy.

48.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

49.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

50.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these

defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of the Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

51. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands relief in his favor and in favor of the Class and against the Defendants jointly and severally, as follows:

A. Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees, and all persons acting under, in concert with, or for them, from proceeding with the shareholder vote on the Proposed Merger, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy;

C. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff and the Class rescissory damages;

D. Directing the Defendants to account to Plaintiff and the Class for all damages suffered as a result of their wrongdoing;

E. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

F. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: November 21, 2018

                                       **MONTEVERDE & ASSOCIATES PC**

                                       /s/ *Miles D. Schreiner*
                                       Miles D. Schreiner
                                       Juan E. Monteverde
                                       350 Fifth Avenue, Suite 4405
                                       New York, NY 10118
                                       Tel.: (212) 971-1341
                                       Fax: (212) 202-7880
                                       Email: mschreiner@monteverdelaw.com
                                                              jmonteverde@monteverdelaw.com

                                       *Attorneys for Plaintiff*